UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISE LYNN DETMERS,

      Plaintiff,               CIVIL ACTION NO. 12-10282

                               DISTRICT JUDGE DENISE PAGE HOOD

      v.                    MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 10), DENY
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 14),
AND REMAND THE CASE TO THE COMMISSIONER**

**I.    PROCEDURAL HISTORY**

    *A.    Proceedings in this Court*

On January 22, 2012, Plaintiff filed suit seeking judicial review of the Commissioner's decision to deny her social security benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), the matter was referred to this Magistrate Judge for a report and recommendation (Dkt. No. 2). Cross-motions for summary judgment are pending (Dkt. Nos. 10, 14). Plaintiff also filed a Reply (Dkt. No. 16).

    *B.    Administrative Proceedings*

Plaintiff applied for disability and disability insurance benefits on December 11, 2007, alleging a disability onset date of March 15, 2006 (Tr. 11). Plaintiff's claim was initially denied by the Commissioner on February 27, 2008 (Tr. 11). On May 27, 2010, Plaintiff appeared with

counsel for a video hearing before Administrative Law Judge ("ALJ") Kenneth E. Stewart, who considered the case *de novo*. In a decision dated July 29, 2010, the ALJ found that Plaintiff was not disabled (Tr. 11-16). Plaintiff requested a review of this decision (Tr. 1). On November 23, 2011, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for further review (Tr. 1-3).

In light of the entire record, this Magistrate Judge finds that substantial evidence does not support the Commissioner's determination that Plaintiff was not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, and the case be **REMANDED** to the Commissioner.

## II.    STATEMENT OF FACTS

### *A.    ALJ Findings*

In analyzing Plaintiff's claim, the ALJ applied the five-step disability analysis and found at step one that Plaintiff had not engaged in substantial gainful activity (Tr. 13).

At step two, the ALJ found Plaintiff had the following "severe" impairments: Hepatitis C[1], and degenerative disc disease of the lumbar spine (Tr. 13).

At step three, the ALJ found no evidence that Plaintiff had an impairment or combination of impairments that met or medically equaled one of the listed impairments in the regulations (Tr. 13).

---

[1] Hepatitis C is inflammation of the liver due to the hepatitis C virus (HCV). Symptoms of Hepatitis C may include: fatigue, joint pain and sore muscles. *See* www.webmd.com/hepatitis/hepc-guide/hepatitis-c-topic-overview (last visited December 18, 2012).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform the full range of medium work (Tr. 14).

At step four, the ALJ found that Plaintiff could perform her past work as a waitress and kitchen prep worker (Tr. 15). Accordingly, the ALJ found Plaintiff was not disabled (Tr. 16).

### B. *Administrative Record*

#### 1. **Plaintiff's Testimony & Statements**

Plaintiff testified at the administrative hearing that she worked as a waitress since the 1990s (Tr. 41). She worked full-time at Travis Restaurant, but left in 1999 due to health reasons (Tr. 41-42). Plaintiff began working part-time at a Coney Island in 2004 (i.e., three days a week for four hours a day) (Tr. 42-43, 45). She worked part-time due to the pain in her hands, arms, legs, shoulder, and neck (Tr. 45). Plaintiff testified that the pain prevented her from performing waitress duties, and there were some days when she could not work (Tr. 46-47, 49-50). Plaintiff stopped working in November 2007 (Tr. 50).

Plaintiff was diagnosed with Hepatitis C in 1995 (Tr. 43). She developed memory loss in 2006 and was unable to do household chores (Tr. 41, 47-48). According to Plaintiff, she suffers from fatigue (Tr. 40) and has pain in her fingers, knees, and neck (Tr. 49). Plaintiff says her condition has gotten "progressively worse" (Tr. 53).

#### 2. **Medical Expert's Testimony**

Dr. Sheldon J. Slodki, a medical expert, testified at the hearing that Plaintiff does not have any of the listed impairments in the regulations (Tr. 37-38). According to Dr. Slodki, "[t]here has not been progressive deterioration and documentation of progressive development of hepatic problems [before December 31, 2006]" and "[t]he complaint of fatigue is not really

elaborated sufficiently" (Tr. 38-39). Dr. Slodki opined that Plaintiff's medical records are not indicative of a severe disability (Tr. 39).

### 3.    Vocational Expert's Testimony

During the hearing, the vocational expert ("VE") testified that a waitress job is considered a semi-skilled occupation that is performed at the light exertional level (Tr. 35). A kitchen prep worker is considered an unskilled occupation that is performed at a medium exertional level. (Tr. 35). According to the VE, Plaintiff does not have any skills transferable to sedentary work (Tr. 35).

### 4.    Physical RFC Assessment

Dr. U. Gupta completed a Physical RFC Assessment on February 27, 2008 in which he determined Plaintiff could: (1) occasionally lift 50 pounds; (2) frequently lift 25 pounds; (3) stand and sit approximately six hours in an 8-hour workday; (4) occasionally climb ramp/stairs; (5) never climb ladders/ropes/scaffolds; and (6) frequently balance, stoop, kneel, crouch, and crawl (Tr. 335-336).

### 5.    Medical Records from Plaintiff's Treating Physician (Dr. Hardik Shah)[2]

In January and March of 2006, Plaintiff complained to Dr. Hardik Shah[3] that she was in pain (Tr. 262, 288, 293). On January 27, 2006, Dr. Shah's office told Plaintiff to go to the emergency room, if her pain got worse (Tr. 262).

Plaintiff's medical records indicate that her Hepatitis C virus load was elevated on January 30, 2006 and February 1, 2006 (Tr. 261, 290).

---

[2] Plaintiff states that Dr. Shah's records are on pages 240-294 of the transcript (Dkt. No. 16 at p.2).

[3] Plaintiff refers to her treating physician as "Dr. Shaw"; however, the records indicate his name is "Dr. Shah."

In February, April, May, July, November, and August of 2006, Plaintiff had a constant ache that she said was better in the morning and improved when she rested, got a massage, stretched, applied heat to the area, changed positions, and took her medication; the pain worsened later in the afternoon, when she walked or bent over, wore certain shoes, and crossed her legs (Tr. 270-271, 277, 279, 281, 284, 289).

On February 7, 2006 and April 7, 2006, Plaintiff was diagnosed with low back pain (Tr. 284, 289).

On May 25, 2006, Plaintiff was diagnosed with bilateral knee pain (Tr. 281).  On May 31, 2006, Dr. Shah performed a routine examination of Plaintiff's lumbar spine, and saw mild degenerative changes with mild facet arthritis (Tr. 247).  Dr. Shah referred Plaintiff to Physical Therapist Kathryn Collins for an initial evaluation due to low back pain, bilateral hip pain, and bilateral knee pain (Tr. 242).  Plaintiff was discharged from physical therapy on August 7, 2006 due to noncompliance with the attendance policy (Tr. 242).

On July 5, 2006, Plaintiff said her right knee pain was worse "due to work" (Tr. 279).

On July 5, 2006 and August 31, 2006, Dr. Shah's assessment of Plaintiff determined she had bilateral hip strain (Tr. 277, 279).

On September 12, 2006, Dr. Shah diagnosed Plaintiff with knee and back pain, Hepatitis C, depression, and chronic pain (Tr. 276).  She had the same diagnoses on October 3, 2006 (Tr. 273).

On March 9, 2006, Dr. Shah performed a procedure in which he injected Plaintiff's lower back with medications "[f]or chronic pain and dysfunction unresponsive to more conservative measures" (Tr. 287).  On June 8, 2006, Dr. Shah performed the same procedure in Plaintiff's right knee (Tr. 280).  On September 14, 2006, the procedure was performed on Plaintiff's left hip

(Tr. 275). On August 3, 2006 and September 26, 2006, Dr. Shah performed the procedure on Plaintiff's right hip (Tr. 274).

On November 6, 2006, Dr. Shah's assessment of Plaintiff determined she had hip pain and low back pain (Tr. 271). On November 14, 2006, Plaintiff stated she felt better "until she went to work"; Dr. Shah's assessment of Plaintiff determined she had low back pain (Tr. 270).

On December 19, 2006, Plaintiff stated the week prior, she had a constant pain in her knees and was unable to get relief, but her knees felt better now (Tr. 267). Dr. Shah determined Plaintiff had low back pain (Tr. 267).

In January through June of 2006, and again in October of 2006 through January of 2007, Dr. Shah prescribed Plaintiff Extra Strength Vicodin and Motrin 800 (Tr. 267-269, 272, 274, 280, 282-283, 286, 288, 291, 293).

### C. *Plaintiff's Claims of Error*

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record and is contrary to the Social Security Act, because the ALJ: (1) did not afford her treating physician's opinion the proper weight; and (2) did not consider medical records from her treating physician in determining her RFC.

## III. DISCUSSION

### A. *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a government agency makes the initial determination that can be appealed first to the agency itself, then to an

ALJ, and finally to the Appeals Council.  *See Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility") (internal quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence").  "However, the ALJ is not free to make credibility

determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a

party") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.  *Governing Law*

The "[c]laimant bears the burden of proving [her] entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).  There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 CFR § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or

> mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 CFR §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden shifts to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 CFR §§ 416.920(a)(4)(v) and (g).

    **C.**    ***Analysis and Conclusions***

        **1.**    **The ALJ Did Not Err By Failing to Give Plaintiff's Treating Physician's Opinion Controlling Weight**

Plaintiff argues that the ALJ erred by not giving controlling weight to her treating physician's opinion (Dr. Hardik Shah)[4].

Under the treating source rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 CFR § 404.1527(d)(2)); *see also* SSR 96–2p. Furthermore, even where the ALJ finds that a treating physician's opinion is not entitled to controlling weight, he or she must apply the following non-exhaustive list of factors to determine how much weight to give the opinion: (1) "the length of the treatment relationship and the frequency of examination," (2) "the nature and extent of the treatment relationship," (3) the relevant evidence presented by a treating physician to support his opinion, (4) "consistency of the opinion with the record as a whole," and (5) "the specialization of the treating source." *Id.*; 20 CFR § 404.1527.

The treating-source rule also "contains a clear procedural requirement." *Wilson*, 378 F.3d at 544 (citing 20 CFR § 404.1527(d)). In particular, "the [ALJ's] decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188 at *5; *Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the

---

[4]Plaintiff treated with Dr. Shah for 12 years (1995-2007).

-11-

record." *Rogers*, 486 F.3d at 243; *see also Wilson*, 378 F.3d at 544 ("[t]he regulation requires the agency to "give good reasons" for not giving weight to a treating physician in the context of a disability determination") (citation omitted).

The flaw in Plaintiff's argument is that she fails to identify a medical opinion that Dr. Shah rendered. Plaintiff simply says: "Beginning in January 2006 and running through December are monthly records of her treating physician, Dr. Shaw[sic], documenting her aching and throbbing body, to wit: knees, hips, neck, back, fatigue, blurry vision, depression, etc." (Dkt. No. 10 at p. 4). But, there is no indication in the record that Dr. Shah rendered an opinion as to any physical or mental limitation related to Plaintiff's ability to work.[5]

This case is similar to *Stroud v. Comm'r of Soc. Sec.*, 2012 WL 5439987 (6th Cir. Nov. 8, 2012) in which the treating physician simply noted the claimant's "symptoms diagnoses and prescriptions" without rendering an opinion. *Stroud*, 2012 WL 5439987 at *2. The Sixth Circuit affirmed the ALJ's decision, finding there was no opinion to be given controlling weight. *Id.*

After review of the record, this Magistrate Judge does not see an opinion from Dr. Shah. Accordingly, the ALJ did not err in failing to discuss an opinion that does not exist.[6]

### 2. The ALJ Erred By Failing to Consider Medical Records from Plaintiff's Treating Physician in Determining Plaintiff's RFC

Plaintiff next argues that the ALJ erred by disregarding Dr. Shah's treatment records in determining her RFC.

---

[5]There is one report that contains a functional limitation for Plaintiff among Dr. Shah's records, but the report was prepared by Kathryn Collins, M.P.T. (Master of Physical Therapy) (Tr. 244-246).

[6]In *Stroud*, the ALJ noted in his decision that the treating physician never opined that the claimant's symptoms precluded him from employment. *Stroud*, 2012 WL 5439987 at *6. In this case, the ALJ did not state in his decision that Dr. Shah did not provide an opinion; however, this Magistrate Judge finds the ALJ's failure to do so, though troubling, constitutes harmless error. *See Harris v. Comm'r of Soc. Sec.*, 2011 WL 167279 at *7 (S.D. Ohio Jan. 19, 2011) (citation omitted).

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting [for] 8 hours a day, . . . 5 days a week, or an equivalent work schedule." SSR 96-8p. Plaintiff testified that she suffers disabling pain that prevents her from performing her past work as a waitress and kitchen prep worker. Plaintiff's subjective complaints of pain are supported by Dr. Shah's treatment records in which he diagnosed Plaintiff with bilateral hip strain; low back pain; bilateral knee pain; and mild arthritis in her spine, and he gave Plaintiff injections for "chronic pain" as well as Extra Strength Vicodin and Motrin 800. Nevertheless, the ALJ concluded that Plaintiff was not disabled because she could perform her past work as a waitress and kitchen prep worker (Tr. 15).

The fact that the ALJ did not reference Dr. Shah by name or cite to his treatment notes can be harmless error, if the ALJ indirectly considered Dr. Shah's records. *See Harris v. Comm'r of Soc. Sec.*, 2011 WL 167279 at *8 (S.D. Ohio Jan. 19, 2011) (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528 (6th Cir. 2000)).

In determining Plaintiff's RFC, the ALJ referenced: (1) Dr. Shah's records from April 7, 2006 in which Plaintiff had back pain radiating down the right leg; (2) x-rays of Plaintiff's lumbar spine that showed mild facet arthritis; and (3) test results from September 2006 that showed mildly elevated hepatitis enzymes (Tr. 15). The ALJ did not consider Dr. Shah's diagnoses of pain, Plaintiff's need for injections, and his prescriptions for Vicodin and Motrin 800.

This Magistrate Judge finds that while Dr. Shah's treatment notes may not change the ALJ's decision, his failure to consider them – in conjunction with Plaintiff's subjective complaints of pain – was not harmless error, and the case must be remanded to the

Commissioner for a complete discussion of Dr. Shah's treatment notes. In addition, the ALJ stated the following regarding Plaintiff's credibility:

> [Plaintiff] stated that she worked as a waitress before her date last insured, and although she had health problems, she acknowledged that her symptoms were less severe than now. She said that she chose to work part time because she could not perform a full week's work.
>
> [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment.

(Tr. 14). On remand, the ALJ must include in his discussion the reasons why he rejected Plaintiff's testimony as not being credible given the ongoing assessment of pain by her treating physician of 12 years. *See Felisky*, 35 F.3d at 1036 (if the ALJ rejects the testimony of the Plaintiff as not being credible, the reasons for that conclusion must be clearly stated). In particular, the ALJ must follow the requirements of, among other provisions, 20 CFR § 404.1529 as well as SSR 96-7p.

> SSR 96-7p provides that:
>
>> the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on credibility of an individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individuals allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

The factors described in the regulations for evaluating symptoms include:

    (i)      Your daily activities;

    (ii)     The location, duration, frequency and intensity of your pain or other symptoms;

    (iii)    Precipitating and aggravating factors;

    (iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

    (v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

    (vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15-20 minutes every hour, sleeping on a board, etc.); and

    (vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 CFR § 404.1529(c)(3). The record demonstrates that the ALJ did not provide specific reasons, supported by evidence in the record, for the weight given to Plaintiff's testimony.

**IV.   CONCLUSION**

Based on the foregoing, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, and the case be **REMANDED** to the Commissioner.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues,

but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated: December 20, 2012

### *Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, December 20, 2012, by electronic and/or ordinary mail.*

*s/Melody Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
